**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| TARRILL PETERS, JR., | Civil Action No. 1:21-cv-04366 |
| Plaintiff, | Judge Charles J. Norgle |
| vs. | Magistrate Susan E. Cox |
| CITY OF CHICAGO, COOK COUNTY, SERGEANT MICHAEL PETRASKI, STAR NUMBER 21001, DETECTIVE JUAN MORALES, STAR NUMBER 20741, DETECTIVE ARTHUR TARASZKIEWICZ, STAR NUMBER 21183, DETECTIVE JOSEPH MARSZALEC, STAR NUMBER 21234, DETECTIVE JOHN CAMPBELL, STAR NUMBER 21279, DETECTIVE THOMAS FLAHERTY, STAR NUMBER 1732, AND ASSISTANT STATE'S ATTORNEY MARTIN MOORE, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' JOINT MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

LEGAL STANDARD........................................................................................................2

ARGUMENT ....................................................................................................................2

I.     Plaintiff's Complaint States a Viable Manuel Claim.........................................2

      A.     Plaintiff's Complaint Sufficiently Alleges a Fact Issue As to Whether There Was Probable Cause For Pretrial Detention of Plaintiff, Not the Arrest..................................................................................................3

      B.     Plaintiff has Adequately Pled That His Continuing Pretrial Detention Was Unsupported By Probable Cause for the Charge of First-Degree Murder..............5

      C.     Plaintiff's Complaint Sufficiently Alleges that Defendants' Improper Conduct Amounted to His Unlawful Pretrial Detention..........................................7

II.     Plaintiff's Complaint Sets Forth A Plausible Claim For Conspiracy ..................8

III.     Plaintiff Has Sufficiently Pled A Plausible Monell Claim ...............................10

      A.     Plaintiff's Complaint Sufficiently Alleges That An Unconstitutional City Custom or Practice Exists .....................................................................11

      B.     Plaintiff's Complaint Sufficiently Alleges The City's Deliberant Indifference to Unconstitutional Policies Which Caused Plaintiff's Injuries........13

      C.     Plaintiff Sufficiently Alleges a Widespread Custom That was the "Moving Force" Behind The Deprivation of Plaintiff's Constitutional Rights ...................14

      D.     The City of Chicago is Liable Because the Defendant Officers Violated Tarrill Peters Jr.'s Constitutional Rights..............................................15

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Anderson v. La Penna,*
    18-cv-6159, 2019 WL 1239667 (N.D. Ill. March 18, 2019) ............................................5, 6, 7

*Appert v. Morgan Stanley Dean Witter, Inc.,*
    673 F.3d 609 (7th Cir. 2012) ............................................................................................2

*Arrington v. City of Chicago,*
    No. 17 C 5345, 2018 WL 620036 (N.D. Ill. Jan. 30, 2018) ....................................................13

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..........................................................................................................2, 10

*Baskins v. Gilmore,*
    No. 17 C 07566, 2018 WL 4699847 (N.D. Ill. Sept. 30, 2018)........................................13, 14

*Beaman v. Freesmeyer,*
    776 F.3d 500 (7th Cir. 2015) ............................................................................................9

*Brown v. City of Chicago,*
    No. 12 C 1764, 2020 WL 6135468 (N.D. Ill. Oct. 16, 2020) ................................................5, 6

*Domingo v. Wooden,*
    18-cv-4653 (N.D. Ill. Aug. 16, 2021) ...............................................................................5, 6, 7

*Geinosky v. City of Chicago,*
    675 F.3d 743 (7th Cir. 2012) ............................................................................................9

*General Electric Capital Corp. v. Lease Resolution Corp.,*
    128 F.3d 1074 (7th Cir.1997) ............................................................................................5

*Gibson v. City of Chicago,*
    910 F.2d 1510 (7th Cir. 1990) ............................................................................................2

*Hampton v. Hanrahan,*
    600 F.2d 600 (7th Cir. 1979), *rev'd in part on other grounds*, 466 U.S. 754
    (1980)................................................................................................................................9

*Harris v. City of Chicago,*
    No. 20 CV 4521, 2020 WL 7059445 (N.D. Ill. Dec. 2, 2020) ................................................4

*King v. Kramer,*
    680 F.3d 1013 (7th Cir. 2012) ............................................................................................13

*Lanigan v. Village of East Hazel Crest. Illinois,*
    1l0 F.3d 467 (7th Cir. 1997) ............................................................................................11

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,*
    507 U.S. 163,113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993) ........................................................10

*Manuel v. City of Joliet, Illinois,*
    137 S.Ct. 911 (2017) ................................................................................... 3, *passim*

*Manuel v. City of Joliet, Illinois,*
    903 F.3d 667 (7th Cir. 2018) ................................................................................4

*McCauley v. City of Chicago,*
    671 F.3d 611 (7th Cir. 2011) ................................................................................10

*McCormick v. City of Chicago,*
    230 F.3d 319 (7th Cir. 2000) ............................................................................10, 11

*McTigue v. City of Chicago,*
    60 F.3d 381 (7th Cir. 1995) ................................................................................11

*Neita v. Chicago,*
    830 F.3d 494 (7th Cir. 2016) ................................................................................3

*Illinois v. Nicholas,*
    842 N.E.2d 674, 683 (Ill. 2005) ............................................................................11

*Peterson v. City of Chicago,*
    No. 14-CV-9881, 2015 WL 13882814 (N.D. Ill. June 23, 2015) ..............................14

*Roldan v. Town of Cicero,*
    17-cv-3707, 2019 WL 1382101 (N.D. Ill. March 27, 2019) ........................................5

*Sornberger v. City of Knoxville, Ill.,*
    434 F.3d 1006 (7th Cir. 2006) ..............................................................................3

*Spearman v. Elizondo,*
    230 F. Supp. 3d 888 (N.D. Ill. 2016) ..................................................................13

*Starks v. City of Waukegan,*
    123 F. Supp. 3d 1036 (N.D. Ill. 2015) ....................................................................9

*Strauss v. City of Chicago,*
    760 F.2d 765 (7th Cir. 1985) ................................................................................12

*Tamayo v. Blagojevich,*
    526 F.3d 1074 (7th Cir. 2008) ..............................................................................8

*Taylor v. City of Chicago,*
    No. 21 CV 2197, 2021 WL 4523203 (N.D. Ill, Oct. 23, 2021) ................................13

*Taylor v. Norway,*
    No. 20-CV-7001, 2021 WL 4133549 (N.D. Ill. Sept. 10, 2021) ............................................12

*Williams v. City of Chicago,*
    No. 16-CV-8271, 2017 WL 3169065 (N.D. Ill. 2017) ............................................................12

**Statutes**

42 U.S.C. § 1983 ..................................................................................................... 4, *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...........................................................................................2, 5

## INTRODUCTION

On February 13, 2016, Tarrill Peters, Sr. died tragically following a chaotic altercation among family members. *See* Dkt 1 ¶ 1. His son, then-17-year-old Plaintiff Tarrill Peters, Jr., who leapt in a car to try to get away from multiple assailants during the altercation, was charged—wrongfully—with his own father's murder. *Id.* Defendants crafted a false narrative that Plaintiff intentionally ran over his father three times with the vehicle. *Id.* Plaintiff was held on "no bond" as an exclusive result of this narrative. *Id.* ¶¶ 3; 89–92; 154–155. After three years in the maximum division at Cook County Jail, and after only two hours of deliberations, Tarrill Peters, Jr. was acquitted of the charge of murder. *Id.* ¶¶ 4; 96. The false narrative was concocted based on police pressures, threats upon witnesses, and selective, unreasonable readings of the available evidence. *Id.* ¶ 1. Nearly every witness who was interviewed more than once by police changed his or her story from initial interviews or 911 calls, and more than one testified in criminal court that police told them what to say during interviews. *Id.* ¶¶ 44–47; 52–53; 62–75. Police also threatened the mother of an alternate suspect in Tarrill Peters, Sr.'s death with the prosecution of her son if she did not give the police's preferred statement implicating Plaintiff Tarrill Peters, Jr. *Id.* ¶¶ 5; 83–85; 149; 152. But for the fabricated statements, Plaintiff would not have been detained for three torturous years.

Plaintiff's Complaint alleges numerous detailed factual allegations to state each claim. First, Plaintiff sets forth facts supporting a *Manuel* claim in his Complaint, as there is a difference between a seizure pursuant to an arrest and a seizure as a result of a wrongful pretrial detention. The latter compels the need for a charge-specific probable cause inquiry, which presents a classic question for the factfinder if there is room for a difference of opinion concerning the facts or the reasonable inferences. Second, Plaintiff has alleged a credible claim for conspiracy, as the

1

allegations detailed in the Complaint, which are to be construed in Mr. Peters Jr.'s favor, strongly support the existence of a conspiracy among Defendants to strip Plaintiff of his constitutional rights. Finally, Plaintiff has adequately pled his *Monell* claim, as Plaintiff has alleged sufficient facts to establish the existence of widespread unconstitutional policies which were the "moving force" behind Plaintiff's unlawful pretrial detention. Thus, Plaintiff respectfully requests that Defendants' motion be denied in full. In the alternative, Plaintiff, at a minimum, requests leave to file an amended complaint.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the Complaint, not the merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on this motion to dismiss, the Court must draw all reasonable inferences in Mr. Peters Jr.'s favor, construe the allegations of the Complaint in the light most favorable to him, and accept as true all of the Complaint's well-pleaded allegations. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

## ARGUMENT

## I.      Plaintiff's Complaint States A Viable *Manuel* Claim.

Defendants' Motion broadly argues that if officers had probable cause to arrest Mr. Peters, Jr. for *any* charge, his claims must fail. Dkt. 33 pp. 4–8. This argument defies relevant law, common sense, and principles of fairness and justice. Indeed, status quo is not such that having probable cause to arrest a person for jaywalking suffices to arrest, charge, and detain that person for murder. First, lengthy unlawful pretrial detention implicates different interests, different harms, and requires different analyses than that of a false arrest claim, resting on a determination

of whether there was probable cause for the continuing detention, not just for the initial arrest. This is a question of fact which is inappropriate for resolution on a Motion to Dismiss. Second, Plaintiff adequately pleads that his prolonged pretrial detention for first-degree murder was unsupported by probable cause because the inquiry is charge specific. Third, Plaintiff sets forth sufficient allegations to show that Defendants' improperly obtained and false intentional "three-hit" narrative led to his unlawful three-year pretrial detention in a maximum security environment.

### A. Plaintiff's Complaint Sufficiently Alleges a Fact Issue as to Whether There Was Probable Cause for Pretrial Detention of Plaintiff, Not the Arrest.

Defendants' argument appears to fundamentally misapprehend Plaintiff's claim, or perhaps the nature of the law. Indeed, aside from a citation to the Supreme Court's ruling in *Manuel v. City of Joliet, Illinois*, 137 S. Ct. 911 (2017), all authority proffered in support of their position relates to other plaintiffs pursuing false arrest or malicious prosecution claims, not claims for unlawful pretrial detention. Dkt. 33 at 5–6.

A person has the right to remain free from arrest and pretrial detention that is without probable cause. This right applies throughout the criminal process, whether the seizure is time-bound, as in the case of a person arrested and later released, or continuing, like someone being held in jail pursuant to legal process while awaiting trial. *Neita v. Chicago*, 830 F.3d 494, 497–98 (7th Cir. 2016); *Manuel*, 137 S. Ct. at 917–20. In the Seventh Circuit, the legality of arrests and pretrial detention pursuant to legal process are analyzed under the rubric of the Fourth Amendment's objective, totality of the circumstances approach. *Neita,* 830 F.3d at 497–98; *Manuel*, 137 S. Ct. at 917–20. Probable cause determination is a jury question "if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Sornberger v. City of Knoxville, Ill.,* 434 F.3d 1006, 1013–14 (7th Cir. 2006) (internal quotations omitted).

3

While false arrest claims consider the reasonableness of an arrest up until the point a person is held for trial, unlawful pretrial detention claims require "the absence of probable cause that would justify *the detention*"—probable cause for that specific, continuing seizure. *Manuel v. City of Joliet, Ill.*, 903 F.3d 667, 670 (7th Cir. 2018), *citing Manuel v. City of Joliet, Ill.*, 137 S. Ct. at 917–20 (emphasis added). The facts underlying *Manuel*, which generated two Seventh Circuit opinions bookending a trip to the Supreme Court, are that police fabricated evidence that pills found in an automobile were an illegally possessed controlled substance, a manufactured narrative which a judge then relied on to order the detention of the plaintiff. After the Supreme Court found that Manuel's claim sounded in the Fourth Amendment, the Seventh Circuit, considering the case on remand, made quite clear what the operative harm was: "the wrongful *custody*." *Manuel*, 903 F.3d at 670 (emphasis added).

*Manuel* claims are viable in situations where "legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements. Then, too, a person is confined without constitutionally adequate justification." *Manuel*, 137 S. Ct. at 918–19. This is precisely what Plaintiff's Complaint alleges. Mr. Peters, Jr.'s position is simple: but for the fabricated and heinous narrative that he *intentionally* ran over his father *three times* with a vehicle, he would not have been detained for years while awaiting trial. The legal wrong at issue in this case is the prolonged pretrial detention of an 18-year-old Plaintiff unsupported by probable cause, not the question of whether any arrest, on any charge, was or would have been lawful. *See Harris v. City of Chicago*, No. 20 CV 4521, 2020 WL 7059445, at *2 (N.D. Ill. Dec. 2, 2020) ("[Claims for] false arrest and unlawful detention protect distinct Fourth Amendment interests under § 1983."). The standards for unlawful pretrial detention are the only ones at play here; while probable cause to arrest on any charge defeats a

plaintiff's *false arrest* claim, the situation and claim facing this Court is fundamentally distinct. Thus, given that the legal basis for Defendants' argument is flawed in the first place, the Motion should be denied.

> **B.      Plaintiff Has Adequately Pled That His Continuing Pretrial Detention Was Unsupported by Probable Cause for the Charge of First-Degree Murder.**

Plaintiff alleges that the finding of probable cause to detain him without bond on the first-degree murder charge was based on the fabricated intentional "three hit" narrative, resulting in his wrongful pretrial detention. *See* Dkt 1 ¶ 90. These allegations establish a *Manuel* claim.

Multiple courts in the Northern District of Illinois have adopted a fact-intensive, charge-specific Fourth Amendment analysis in the context of wrongful pretrial detention claims, requiring, as *Manuel* guides, probable cause for the continuing detention, not just for the initial arrest. *See, e.g.*, *Roldan v. Town of Cicero*, 17-cv-3707, 2019 WL 1382101 at *4 n.5 (N.D. Ill. March 27, 2019) (Dow, J.); *Anderson v. La Penna*, 18-cv-6159, 2019 WL 1239667 at *3 (N.D. Ill. March 18, 2019) (Gettleman, J.); Summary Judgment Opinion, *Domingo v. Wooden*, 18-cv-4653 (N.D. Ill. Aug.16, 2021) (Pacold, J.), transcript attached as Exhibit 1;[1] *contra Brown v. City of Chicago*, No. 12 C 1764, 2020 WL 6135468, at *4–5 (N.D. Ill. Oct. 16, 2020) (Norgle, J.).

In *Anderson,* Judge Gettleman recognized the same distinction that the Court should recognize here: a lack of probable cause for a higher charge that causes prolonged pretrial seizure is actionable despite probable cause for a lesser charge that could not be justifiable for the extent of the seizure. 2019 WL 1239667. In *Anderson,* the court considered a similar situation on a motion to dismiss where an individual received multiple charges of differing severity and was

---

[1] *See Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997) (courts may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment).

detained based on the more serious and allegedly fabricated charges. *Id.* Though *Anderson* was dismissed without prejudice on other grounds (a *Heck* issue of whether the pleading impugned the validity of the conviction for the least serious charge), dismissal is not warranted here, as Plaintiff was found guilty of nothing, leaving no room for an evidentiary bar. *Id.*; Dkt. 1 ¶¶ 96-97.

Recently, in *Domingo,* the district ruled against defendant officers on summary judgment in a similar context, explaining that on this claim "probable cause inquiry is charge specific." Summary Judgment Opinion, 18-cv-4653, Exhibit 1 at 12:19-20. There, a person was charged with felonies, leading to a high bond amount that the plaintiff was unable to satisfy and lengthy pretrial detention. Prosecutors eventually amended the charges to a misdemeanor for which there was, arguably, probable cause to arrest. In her ruling, Judge Pacold explicitly stated that the appropriate inquiry on a wrongful detention claim is not whether there was probable cause for *any* charge, but, rather, whether there was probable cause for the detention. *Id.* at Exhibit 1.

Moreover, as the Bond Court transcript makes clear, Mr. Peters, Jr.'s "no-bond" determination was specifically and exclusively a result of the false "three hit" narrative regarding his supposedly *intentional* conduct, charged as a murder.[2] Dkt. 1 ¶¶ 90-91. Unlike this Court's ruling in *Brown v. City of Chicago*, this is not an instance where the plaintiff was detained pretrial "at least in part" due to an offense for which there was probable cause or where the plaintiff was given a monetary bond that he was unable to satisfy. 2020 WL 6135468, at *4–5. Rather, this case left no room for "what ifs"—Plaintiff was held in maximum security on *no bond*, a quintessential, severe, and irreversible continuing seizure that was the exclusive result of a false narrative.

---

[2]If the Court ultimately contends that Plaintiff has not shown he would have been released absent the fabrications and grants the Motion, Plaintiff respectfully contends that the dismissal should be without prejudice to allow for the inclusion of additional factual material in the complaint in the form of affidavits or declarations demonstrating that with a lesser charge, Mr. Peters Jr. would have been allowed the possibility of release on bond, and, further, that this bond would have been paid.

While Defendants repeatedly contend that there was sufficient probable cause to arrest and detain Plaintiff for other, lesser, charges (Dkt. 33 pp. 4–7), they wholly disregard the first-degree murder charge—the only charge relevant here. Nor do Defendants' contentions regarding the trial testimony of Michelle Hughes help them carry their burden because Defendants only argue that Michelle Hughes' statements provided probable cause for other, lesser charges that are not at issue here, and which are not dispositive of the legal issues at play. Dkt. 33 at 6–8.

The reasoning in *Anderson* and *Domingo*—informed by the text of *Manuel*—should carry the day. Indeed, the alternative creates untenable possibilities. If a person, such as Plaintiff, were detained pretrial based on fabricated evidence for the most serious charge and later acquitted, they would have no constitutional recourse for their injury because there was probable cause for another offense, despite that the lesser offense would not have led to the same degree of pretrial detention. This is not what the Fourth Amendment contemplates, nor what the Seventh Circuit and Supreme Court had in mind in *Manuel.* Despite that multiple offenses were charged, the crux of the matter is that Plaintiff's detention lacked probable cause to justify such an extreme pretrial seizure.

### C.   Plaintiff's Complaint Sufficiently Alleges that Defendants' Improper Conduct Amounted to His Unlawful Pretrial Detention.

The record, particularly at this early stage, amply supports the position that fabricated and coerced witness statements were the reason for Tarrill Peters, Jr.'s prolonged pretrial detention in the maximum security division of the jail.

*First*, the Complaint and trial transcript identify multiple areas of concern with respect to the probable cause issues in this case, describing witnesses who testified that Defendant Officers directed them on what to say during interviews. Dkt. 1 ¶ 53. One such witness, Michelle Hughes, has a son, Arsenio Hughes, who was an alternate suspect in Mr. Peters, Sr.'s death. The Complaint describes an interrogation in which Arsenio Hughes was prompted by Defendants to describe the

accident as intentional, after initially referring to the event as "an accident." Dkt. 1 ¶ 79.

*Second*, the Complaint places statements from witnesses whose initial interviews do not match later statements side by side. Dkt. 1 ¶¶ 66–75. Plaintiff has shown, or, at a minimum it is reasonable to infer, that the eventual false narrative in which Tarrill Peters, Jr. intentionally hit his father three times with a vehicle was conjured into existence by the joint actions of Defendants.

*Third*, Plaintiff has pled that Ms. Hughes' statements were fabricated and coerced, and introduced allegations in support regarding the conduct of Defendant Officers in their interactions with Ms. Hughes and her family. Dkt. 1 ¶¶ 66–68; 79; 83–85. Defendants' use of the trial testimony of ASA Latoya Hughes (who is not a defendant), providing that Michelle Hughes told her she was not threatened, simply creates a fact issue as to the nature of Michelle Hughes' interactions with authorities in this case. Notably, in contrast to ASA Hughes' testimony, Plaintiff calls attention to Michelle Hughes' trial testimony in the Complaint, where she provided the context of her statements to authorities, outlining that, upon information and belief, Defendant Officers visited her home and made threats regarding her son, Arsenio, saying that they "didn't know who it's going to be but somebody is going" to jail. Dkt. 1 ¶ 83. The Complaint shows further that Michelle Hughes testified that Defendant Officers threatened to "get her sons" shortly before her final statement to authorities. Dkt. 1 ¶ 85. Defendants, naturally, disagree as to the reasons and accuracy of Ms. Hughes' statements to authorities. But this too is a fact issue, not an issue to be resolved on a Motion to Dismiss, where well pleaded facts are accepted as true, and where all possible inferences are drawn in favor of a plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008). Thus, given the factual dispute, the Motion should be denied.

## II. Plaintiff's Complaint Sets Forth A Plausible Claim For Conspiracy.

Hanging their hat on the flawed argument that probable cause for a lesser offense is sufficient to insulate Defendants from liability for Tarrill Peters, Jr.'s wrongful pretrial detention,

Defendants allege Plaintiff's conspiracy claim must fail because it is not an independent basis of liability. Dkt. 33 pp. 8–9. Because Plaintiff has demonstrated that individual Defendants, as part of a conspiracy, committed constitutional violations, this argument fails.

To state a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must allege facts to show that at least two individuals, one of whom is a state official, reached an agreement to violate plaintiff's constitutional rights. *See Geinosky v. City of Chicago*, 675 F.3d 743,749 (7th Cir. 2012). Hence, "[u]nder *Twombly*, all plaintiff needed to allege was a plausible account of a conspiracy." *Id.* Moreover, the plaintiff must show there was a meeting of the minds and overt acts taken in furtherance of the conspiracy. *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). The Complaint alleges multiple law enforcement agents, including Defendants, agreed to violate Plaintiff's constitutional rights and took overt actions to do so. *See* Dkt. 1 ¶¶ 48; 50; 53; 79.

Case law is clear that circumstantial evidence may provide adequate proof of conspiracy. *Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir. 1979), *rev'd in part on other grounds*, 466 U.S. 754 (1980); *Starks v. City of Waukegan*, 123 F. Supp. 3d 1036 (N.D. Ill. 2015). "An express agreement among all the conspirators is not a necessary element of a civil conspiracy. The participants . . . must share the general conspiratorial objective, but they need not know all the details of the plan." *Hampton v. Hanrahan*, 600 F.2d at 621. Plaintiff meets this burden here.

Here, the circumstantial evidence detailed in the Complaint strongly supports the existence of a conspiracy among Defendants to strip Plaintiff of his constitutional rights. Various Defendants took dubious actions in support of their agreement to wrongfully prosecute Plaintiff on a false narrative. Dkt. 1 ¶¶ 83; 85. Plaintiff alleges that it was not only Defendant Officers who engaged in this conspiracy, as they and Defendant Moore corrected Arsenio Hughes when he did not tell them what they wanted—*i.e.*, that the supposed acts were intentional. *Id.* ¶ 79.

9

The allegations in the Complaint, including those detailed above, flatly contradict Defendants' false claim that the Complaint contains nothing more than allegations of "generalized wrongdoing." Rather, the Complaint pleads specific, detailed allegations evidencing the Defendants' meeting of the minds and overt acts to deprive Plaintiff of his constitutional rights. Dkt. 1 ¶ 61. The Complaint goes on to set out the specific changes in the testimony of certain critical witnesses fabricated by Defendant Officers, including that of Michelle Hughes (*id.* ¶¶ 66–68; 83–85), Roy Anderson (*id.* ¶¶ 69–71), and Taconda Douglas (*id.* ¶¶ 72–75). In addition, the Complaint alleges in detail threats to Arsenio Hughes in order to accomplish this purpose (*i.e.*, depriving Plaintiff of his constitutional rights). *Id.* ¶¶ 76–79.

Thus, the factual allegations detailed in the Complaint are ample to evidence the Defendants' agreement to deprive Plaintiff of his constitutional rights and substantiate the overt actions taken in furtherance of that conspiracy. Defendants' Motion should be denied.

### III. Plaintiff Has Sufficiently Pled A Plausible *Monell* Claim.

Defendant Officers' Motion argues that Plaintiff has failed to allege sufficient facts to establish the existence of a widespread unconstitutional policy or that the alleged policies were the "moving force" behind Plaintiff's unlawful pretrial detention claim to support his *Monell* claim. Dkt. 33 pp. 11–13. This argument too should be rejected and the Motion denied.

The Supreme Court has made clear that "federal courts must not apply a heightened pleading standard in civil rights cases alleging § 1983 municipal liability." *McCormick v. City of Chicago,* 230 F.3d 319, 323 (7th Cir. 2000) (citing *Leatherman v. Tarrant Cty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164, (1993)). The Seventh Circuit has held that a *Monell* plaintiff must only plead "factual content that allows the court to draw the reasonable inference" that the municipality maintained a policy or custom that caused the alleged constitutional

deprivation. *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Despite Defendants' contention that the allegations are merely conclusory (Dkt. 33 p. 10), the Complaint does more than set forth "boilerplate allegations" (*Lanigan v. Vill. of E. Hazel Crest. Illinois*, 110 F.3d 467, 479 (7th Cir. 1997)), specifically alleging the existence of a widespread policy and practice of failing to investigate and discipline unconstitutional conduct of its police officers, encouraging a code of silence that emboldens officers to commit misconduct, and that the City of Chicago has been deliberately indifferent to its officers committing constitutional abuses. *See* Dkt. No. 1 at ¶¶ 107–137.

### A. Plaintiff's Complaint Sufficiently Alleges That an Unconstitutional City Custom or Practice Exists.

Here, the Complaint sufficiently pleads *Monell* liability via unwritten policies and practices so well settled as to constitute a custom or usage with the force of law. *See McCormick v. City of Chicago,* 230 F.3d at 324 (citing *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir.1995)).

***First***, Plaintiff alleges facts showing a widespread custom or practice that was applied to him. For example, Plaintiff alleges the suspect practice of using investigative alerts was applied to witnesses and alternate suspects in connection with the death of Mr. Peters, Sr. Dkt. 1 ¶¶ 54; 118. Plaintiff further alleges that the Chicago Police Department ("CPD") has elicited coerced fabricated testimony in support of other, often-vacated criminal convictions, tactics similar to those employed during the investigation of the death of his father. *See* Dkt. 1 ¶ 116.

Additionally, Plaintiff alleges that Arsenio Hughes made his statement while held on another criminal charge (Dkt. ¶ 76) (in the "inherently coercive atmosphere"[3] of a police station),

---

[3] *Illinois v. Nicholas*, 842 N.E. 2d 674, 683 (Ill. 2005).

and that others investigating the case implicitly and explicitly threatened Michelle Hughes, Arsenio's mother, with Arsenio's prosecution in order to get the statement they wanted (Dkt. 1 ¶¶ 83; 85). Finally, Plaintiff alleges that Defendant Officers have had at least 78 unsustained complaints against them. (*Id.*¶ 126). While the Seventh Circuit has explained that "the number of complaints filed, without more, indicates nothing," *Strauss v. City of Chicago*, 760 F.2d 765, 768–69 (7th Cir. 1985), this Court should follow other district courts distinguishing *Strauss* on the ground that the Plaintiff here has pleaded the "more" that is necessary. *Taylor v. Norway*, No. 20-CV-7001, 2021 WL 4133549, at *5 n.3 (N.D. Ill. Sept. 10, 2021) (citations omitted).

Though he does, Plaintiff need not identify any similar situations that plausibly suggest the existence of an alleged widespread practice. *See, e.g., Williams v. City of Chicago*, No. 16-CV-8271, 2017 WL 3169065, at *9 (N.D. Ill. July 26, 2017) ("Post-*White* courts analyzing *Monell* claims similarly have 'scotched motions to dismiss' premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff." (citations omitted)).

**Second,** Plaintiff does in fact set forth specific allegations of widespread customs or practices *beyond* those of his own experience. Plaintiff alleges that the DOJ Report stated that the CPD had patterns or practices of violating the Fourth Amendment, including violations similar to those upon which Plaintiff's § 1983 claims rest. Dkt. 1 ¶ 109. Relevant here, Plaintiff points to the Report's findings connecting this conclusion to the present case, alleging that the Report revealed that CPD officers routinely employed questionable tactics, including coercing people into providing information, and even arresting individuals, in attempts to gain information about crimes. *See* Dkt. No. 1 at ¶¶ 110;114.

While Defendants' Motion suggests that reference to the DOJ's thorough analysis of

CPD's policies and practices is apparently nothing more than "bald conclusory allegations" (Dkt. 33 p. 11), courts in this district have repeatedly considered the DOJ Report in evaluating *Monell* claims. *See Baskins v. Gilmore*, No. 17 C 07566, 2018 WL 4699847, at *5–8 (N.D. Ill. Sept. 30, 2018) (considering the DOJ report when declining to dismiss a *Monell* claim); *Arrington v. City of Chicago*, No. 17 C 5345, 2018 WL 620036, at *4 (N.D. Ill. Jan. 30, 2018) ("[T]he Seventh Circuit has held that government reports such as the DOJ Report at issue here can be admissible evidence of municipal notice relevant to a *Monell* claim" (citations omitted)). Indeed, in *Taylor v. City of Chicago*, a case Defendants rely upon, the court only refused to consider the DOJ Report because, unlike here, the plaintiff did not cite the DOJ Report in his pleadings. No. 21 CV 2197, 2021 WL 4523203 at *2–3 (N.D. Ill, Oct. 4, 2021).

Additionally, Plaintiff alleges the existence of a pervasive "code of silence" in the department, which is supported by allegations that the City has known about it throughout all times relevant to his Complaint. *See* Dkt. No. 1 ¶¶ 127–137. These allegations also demonstrate that Plaintiff has sufficiently pled a *Monell* claim. *See Spearman v. Elizondo*, 230 F. Supp. 3d 888, 894-95 (N.D. Ill. 2016) (plaintiff sufficiently alleged that "code of silence," and policy of refusing to discipline officers, was moving force behind her constitutional injuries).

**B.**    **Plaintiff's Complaint Sufficiently Alleges the City's Deliberant Indifference to Unconstitutional Policies, Which Caused Plaintiff's Injuries.**

Plaintiff adequately alleges Defendants' deliberate indifference to unconstitutional policies, which caused his injuries. Defendants contend that Plaintiff "fails to show how [alleged constitutional failures of practices evince] a cognizant or deliberately indifferent decision by the City to allow ongoing constitutional violations." Dkt. 33 p. 14. But "faced with actual or constructive knowledge that its agents will probably violate constitutional rights, [the City] may not adopt a policy of inaction." *King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012) (citations omitted).

Contrary to Defendants' argument, the substantial allegations in the Complaint generate a reasonable inference that despite the City's actual and constructive notice of its systematic failings regarding constitutional policing, Officer Defendants and their dozens of disciplinary complaints, and the code of silence rampant within the department, the City has failed to take any action to remedy these defects. Defendants' Motion is silent on any City attempts to remedy recognized shortcomings in CPD policies and practices. For these reasons, Plaintiff has adequately alleged that the City was deliberately indifferent to unconstitutional policies and practices.

## C. Plaintiff Sufficiently Alleges a Widespread Custom That Was the "Moving Force" Behind the Deprivation of Plaintiff's Constitutional Rights.

Defendants briefly argue that Plaintiff's Complaint fails to demonstrate causation. Defendants essentially argue that if Plaintiff alleges a widespread custom (he has), Plaintiff fails to plausibly allege that the custom caused Plaintiff's case injury. Dkt. 33 pp. 13–14. Plaintiff alleges that the widespread customs discussed above enabled the conspiracy and unlawful detention (Dkt. 1 ¶ 176), caused Defendant Officers to violate his constitutional rights (*id.* ¶ 177), led Defendant Officers to submit fabricated reports and statements with the intent of instituting and continuing judicial proceedings for alleged crimes for which there is no reasonable suspicion or probable cause (*id.* ¶ 179), and that Plaintiff suffered damages in violation of his constitutional rights as a result of that misconduct. *Id.* ¶ 180. The Court need not accept mere legal conclusions, but these conclusions are supported by the factual allegations discussed above regarding discipline, training and a code of silence. *See Baskins v. Gilmore*, No. 17 C 07566, 2018 WL 4699847, at *5 (N.D. Ill. Sept. 30, 2018) (finding that, at the motion-to-dismiss stage, as the plaintiff "adequately plead[ed] that the City knew about the code of silence and that the code emboldened officers to engage in misconduct and cover it up … the City could be deemed the 'moving force' behind the violations"); *Peterson v. City of Chicago*, No. 14-CV-9881, 2015 WL 13882814, at *5–

14

*6 (N.D. Ill. June 23, 2015) (finding "one could reasonably infer" causation based on similar allegations on discipline and code of silence). Accordingly, this Court should deny the Motion.

### D. The City of Chicago Is Liable Because the Defendant Officers Violated Tarrill Peters Jr.'s Constitutional Rights.

The City also moves to dismiss the *Monell* claim on the grounds that there is no underlying constitutional violation. Dkt. 33 p. 14. However, as discussed above, Plaintiff has adequately pled an underlying constitutional violation: Plaintiff's wrongful pretrial detention in violation of the Fourth Amendment and Section 1983. This pleading is sufficient even if this Court were to find that Plaintiff's conspiracy claim fails.

Dated: December 2, 2021

Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**

*s/ Michael G. Babbitt*

Michael G. Babbitt
Craig C. Martin
Aaron J. Hersh
Bianca L. Valdez
300 North LaSalle
Chicago, Illinois 60654-3406
(312) 728-9000
Email: mbabbitt@willkie.com
cmartin@willkie.com
ahersh@willkie.com
bvaldez@willkie.com

Daniel Massoglia
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
(708) 797-3066
Email: daniel@first-defense.org

*Attorneys for Tarrill Peters, Jr.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| TARRILL PETERS, JR., | Civil Action No. 1:21-cv-04366 |
| Plaintiff, | Judge Charles J. Norgle |
| vs. | Magistrate Susan E. Cox |
| CITY OF CHICAGO, COOK COUNTY, SERGEANT MICHAEL PETRASKI, STAR NUMBER 21001, DETECTIVE JUAN MORALES, STAR NUMBER 20741, DETECTIVE ARTHUR TARASZKIEWICZ, STAR NUMBER 21183, DETECTIVE JOSEPH MARSZALEC, STAR NUMBER 21234, DETECTIVE JOHN CAMPBELL, STAR NUMBER 21279, DETECTIVE THOMAS FLAHERTY, STAR NUMBER 1732, AND ASSISTANT STATE'S ATTORNEY MARTIN MOORE, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## NOTICE OF FILING AND CERTIFICATE OF SERVICE

Jessica L. Griff
Gregory Beck
City of Chicago Department of Law
2N. LaSalle, Suite 900
Chicago, IL  60602
(312) 744-2826
Email: Jessica.Griff@cityofchicago.org
        Gregory.Beck@cityofchicago.org

Eydie R. Vanderbosch
Eydie R. Vanderbosch, Esq. – Legal and Consulting Services
10 S. Riverside Plaza
Suite 875
Chicago, IL  60606
(312) 474-6043
Email: eydie@ervjd.com

**PLEASE TAKE NOTICE** that on this 2nd day of December, 2021, I have caused to be e-filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division **PLAINTIFF'S RESPONSE TO DEFENDANTS' JOINT MOTION TO DISMISS**, a copy of which is herewith served upon you.

I hereby certify that I have served this notice and the document above by causing it to be delivered by electronic means to the persons named above at the address shown this 2nd day of December, 2021.

*s/ Michael G. Babbitt*

Michael G. Babbitt
Craig C. Martin
Aaron J. Hersh
Bianca L. Valdez
300 North LaSalle
Chicago, Illinois  60654-3406
(312) 728-9000
Email: mbabbitt@willkie.com
        cmartin@willkie.com
        ahersh@willkie.com
        bvaldez@willkie.com

Daniel Massoglia
First Defense Legal Aid
601 S. California Ave.
Chicago, IL  60612
(708) 797-3066
Email: daniel@first-defense.org

*Attorneys for Tarrill Peters, Jr.*